Good morning. May it please the court, my name is John Ward, and along with Paul Coates and Jake Daniel, who represent the plaintiff appellant in this case. And I see the court has reserved five minutes for rebuttal, I thank you for that. For purposes of summary judgment, your honors, a district court must consider the entire record before it and may not decide a case based upon a sound bite. Here, the district court failed to account for all the testimony and evidence before it, and therefore under Rule 56, it committed reversible error. And we're here to ask this court to reverse the district court's entry of summary judgment in favor of the defendant. I have four primary points I'd like to touch on briefly this morning. And the first is that the plaintiff's evidence as to medical causation in this case is valid as a matter of North Carolina law in this diversity case. It's interesting to the court, this is a nursing home wrongful death case, and there's essentially two elements, standard of care and causation. There's no issue as to the first, the standard of care. The plaintiff has two experts as to the standard of care, the defendant has not challenged those experts. The issue is causation, we have a causation expert that is Dr. Carol Rupp. The defendant has not challenged Dr. Rupp's qualifications. And should the standard for expert testimony on causation here be a matter of state law or federal law? We believe it should be a matter of state law, Your Honor, because it's a diversity case following North Carolina state law as to medical negligence. And the district court treated it as a matter of state law, didn't it? Yes, Your Honor. So what is the state law? The state law, Your Honor, is that we have to show evidence as to causation on a more likely than not probability standard. And there are multiple cases that are cited in the record that speak to that standard, more likely than not. The Franklin case and the Barbie case that are cited by the defendant. The Gaines case as well as the Dave versus Brian case that we've cited in our brief. The standard is not absolute certainty. The standard is not that the expert has to know anything. The expert has to give an opinion. Is more likely than not different than reasonable degree of medical certainty? We believe so. How? Well, I think, first of all, it's a semantics and nomenclature issue. Some of the cases talk about reasonable degree of medical certainty, but there are cases, and I just mentioned them, they talk about it's probability. And when you dig deeper into this issue, you look at the Dave versus Brian case that I will discuss here, we're talking about has to be more likely than not probable. Probability is more likely than not. I just seem to remember this was always about a reasonable degree of medical certainty. It's a term North Carolina uses over and over again. And you look at the plethora of cases on it, I don't recall seeing more likely than not a preponderance of the evidence. Where do you get that from? Tell me the case that does that. Dave versus Brian. The key case here, the one case that's been cited where something sort of like what happened. What's the case? Did you say what's the case? It's the Dave versus Brian case. Let's talk about that, Your Honor. And it uses the language more likely than not. As well as probability. And these cases talk about probability is more likely than not. That's where the more likely than not talks about probable is something that's more likely that it happens than to not happen. And that's the standard. In the Dave versus Brian case, what happened there, that happened at trial versus during the discovery deposition. But the plaintiff's causation expert testified and was cross-examined by defense counsel. And the defense counsel said, your testimony is all speculation, isn't it? And the expert said yes. And the defense counsel said, wait, we got them to say speculation. Speculation, Judge Wynn, I'm sure you're also aware, is invalid. And we cited that. So they said, you said speculation. That's invalid as a matter of law. We win. And what the court said in Dave versus Brian is, hold on. We can't look at a portion of the testimony. We have to look at the entire record. They said that they, quote, can't pull out portions of the record and disregard others. So in Dave versus Brian, the expert's report, just like here, was entered into the record. It was in evidence at trial. And the expert had  What's the impact of Fitzgerald and Ordens in terms of whether we should consider state law or federal law on this? I believe that the district court applied state law. I don't know that there is a federal law of medical negligence, Your Honor. It's a diversity case. So it comes to us because of diversity of citizenship. And it is a state law case where all of the parties have cited state law. The defendant has also cited state law. All of the seminal decisions talking about the causation issue here come from the North Carolina State Courts. And there hasn't been any dispute about that among the parties. So returning to Dave versus Brian, the report was in evidence. And the court said you had to look at the totality of the testimony. You had to look at the entire testimony. And did the report say more likely than not? I don't know what the report said in Dave, although the court clearly found it was proper testimony. It was probable testimony. Dr. Rupp here never mentions the word speculation. She never says that she's speculating, which is what the expert in Dave said that he was doing. But then he was asked questions at length. And the court talked about that. The language they talked about was that they testified at length. He gave a detailed explanation of the language used in Dave versus Brian. Well, here on pages 62 through 108 of the appendix, Dr. Rupp gives a detailed explanation of her opinions. And on page 73 of the appendix, Dr. Rupp testifies, more likely than not, the negligence of the defendant in giving Ms. Riggins the wrong fluids was the cause of her wrongful death. Interestingly, and this is moving on, as I say, way into my second point, the district court's opinion is internally inconsistent. And what I mean by that, the opinion at page 180 of the record, which is the ninth page of the opinion, it acknowledges that her report was in evidence, and it acknowledges that she testified consistently with that report. But unlike Dave versus Brian, the district court, just without explanation, focused on the question and answer on page 108 of the appendix and did not talk about the testimony and evidence through the report. What is the JA's cite for her report? Page 132 to 133. Thank you. At page 50 of the appendix, that's where, during the deposition, the defense counsel admitted it as an evidence, as an exhibit to the deposition. But the report is at page 132 and 133, and it's the 133, it's the conclusory paragraph of her report, whereby she gives her causation testimony or her opinion in that case. And she says within a reasonable degree of medical certainty there. She also uses the term more likely than not, both in her report and in her testimony. Taking a look at the appendix, if we look at page 133, I believe it's the last paragraph of her report, the last maybe even sentence. She says, it is my opinion that more likely than not, the breach in the standard of care by the staff, and then she goes on to explain, caused the death of Ms. Riggins. I believe it's the last sentence in her report there at 133, Your Honor. So she does use that term, more likely than not, in her report. She uses that term in the deposition, and the district court acknowledged she testified consistently, but then just seems to disregard that evidence. As the court is well aware, this is the summary judgment stage. We need to look at the evidence in the light most favorable to the non-moving party, here being the plaintiff. The district court acknowledged that evidence was before it, but just seemed to disregard it, based upon the sound bite on page 108. And another thing to consider, Your Honors, is that our evidence doesn't have to be perfect. As long as we have a forecast of evidence to where we have shown a possibility to win the case, we don't have to have perfect evidence. But address the standard as it's set forth in Fitzgerald. Fitzgerald makes it very clear that when you're dealing with sufficiency issues, create a jury question, that is controlled by federal rules. And in this instance, it goes on to state that in terms of your likelihoodness, it talks about a reasonable degree of medical certainty that it is more likely that the defendant's negligence was the cause than any other cause. So the language, reasonable degree of medical certainty, is there not more likely than not in the federal context, and I'm not even sure it's there in the state context, because you bring in the probability, but it's in this vein, a reasonable degree of medical certainty is pretty much a known standard. In this instance, in the deposition, your client asked the question, when asked, was it to a reasonable degree of medical certainty? And the answer was no. And guess what? Whoever was representing, whether it was you or whomever, didn't come back at any time and say anything. He just posed the deposition out and waited for some period of time until a summary judgment motion comes forth. Then you bring an affidavit in. So the question then becomes, if the affidavit says something different than what she said there, is it an abuse of discretion for the court to strike it? And I think that under those circumstances, it's very hard to say a trial court has abused its discretion where that testimony is there in a deposition, and the counsel representing the party at that time made no effort. I don't know what could have been said. It probably could if it was a confusion, but it's there in the record. I'll try to respond to all those points, Your Honor. First of all, at page 73 of the appendix, there was a question. Question. You can't say to a reasonable degree of medical certainty what she aspirated on, can you? And Dr. Rupp's answer is, more likely than not, with not having any evidence that her fluids are being thickened, it would be a thin liquid would be the more likely than not candidate for her aspirating. So she was asked that question multiple times, and the first time she did give an answer, more likely than not, which we believe under both state and federal law. So we have to, that is only if we agree with you that it is more likely than not. But you will agree that she does not say it's to a reasonable degree of medical certainty. She later answers no to that one question, Your Honor. But even there, she didn't say it was to a reasonable degree of medical certainty. She says more likely than not. That's a preponderance of the evidence. More likely than not. Is that a much lower standard than to a reasonable degree of medical certainty? Your Honor, I'm not aware. Our research has not disclosed, and the defendant has not argued that there's a different standard under federal law for a reasonable degree of medical certainty as opposed to more likely than not. And I would submit that if you look carefully Well, that's why I pointed you to Fitzgerald and to Owens. I mean, we've said it. Those are our cases in which we've said it directly on point. And the case says a reasonable degree of medical certainty that it was more likely that the defendant's negligence was caused than any other cause. And it just seems to me, based on common sense, that a reasonable degree of medical certainty is what makes the person an expert. If the standard is more likely than not, I'm an expert in everything. Or the jury. Or the jury. We believe that, Your Honor, that that goes to the qualification has to be submitted by a qualified medical expert. And again, there's no challenge to Dr. Rupp's qualification here. So she can say more likely. No, we're not talking about her qualifications. We accept that she's an expert. She has to render an opinion in conformance with North Carolina law or federal law in this instance. And I think in both instances, we're talking about a reasonable degree of medical certainty. I just don't recall in medical cases of this sort more likely than not. Is that in the instructions? I believe it is, Your Honor. We don't have the patent jury instructions before us. I don't believe either side submitted them. However, I'd point, Your Honor, again, to two cases cited by the defendant. That's the Franklin case and that's the Barbie case that talk about probability and more likely than not. Also the Gaines case and the Dave v. Bryant case. Well, I keep pointing you to the two cases I'm telling you about. They're four-circuit cases. It's Fitzgerald and Owens. They are right on point with what I'm talking about when you're talking about the opinion of a medical expert as being evidence. And I'm not here to argue with the court. I think that those terms do get conflated sometimes in the case law. And I believe it can be confusing. But when all the parties here seem to agree that North Carolina's substantive law... I'm not a question of arguing. When you come back, if you will, take a look at those cases and tell me why they are not controlling in this case because they are definitely four-circuit precedent. Yes, Your Honor. I'll try to do that during my rebuttal. But just to finish up right here, you asked why don't we come back and ask questions during the deposition. Well, that's a good question, Your Honor. And that goes to the context of this being a discovery deposition. A discovery deposition, of course, is backwards, meaning that it starts with cross-examination by the opposing counsel. But essentially, once he introduced her report, that's her direct examination. Her testimony is in that report. She affirms it. And as the district court found, and as we've cited on page 73 of the appendix, she testified consistently with that report. But the report, there does seem to be a conflict because the report in its closing paragraph where she lays out her opinion says, it is my opinion to a reasonable degree of medical certainty. But then when she testifies, at least in response to that one question, she says her opinion is not, with respect to that one question, her opinion is not to a reasonable degree of medical certainty. So what are we to do or the district court to do with that conflict? Give it to the jury. Your Honor, I would go to Day v. Bryant, which we had a similar soundbite in that case where the expert testified in direct that he was confident in his opinion. He testifies in his cross-examination that he's only doing speculation, which there's also a case law that says speculation is no good. But later the court looked at his entire testimony. It also looked at his report, which was in evidence, like the report is here, and found that when you look at all of the evidence, that the credibility, inconsistent answers by an expert are not fatal to their testimony. It's credibility that goes to the jury. That's right there in Day v. Bryant. I'd like to reserve the rest of my time for rebuttal. Thank you very much. All right. May it please the court. Good morning. My name is Michael Phillips. I represent the appellee in this matter. The defendant's motion for summary judgment challenged the sufficiency of the plaintiff's evidence regarding the issue of medical causation. State law or federal law? State law, I believe, is correct. And in doing that, the plaintiff's causation testimony by Dr. Rube was both subjective and speculative. She lacked any evidentiary support, and her testimony was due to be obstructed. The district court is due to be affirmed. More likely than not, a reasonable degree of medical certainty. Well, for argument's sake, there seem to be cases that say you don't have to use magic words. That's cited in the district court's opinion. The Jordan case, which is a Maryland district case. Magic words and testimony taken as a whole are what count. You don't have to use the word magic words to a reasonable degree of medical certainty. Well, tell me, what I'm confused about, you've got Owens, you've got Fitzgerald, you've got a number of other circuits that have addressed it. Sixth Circuit has addressed it and pretty much agrees that this business of medical certainty is kind of confusing because doctors don't really talk like that. Right. Fourth Circuit seems to go that way. I haven't found anything in the Fourth Circuit, when I look at Fitzgerald and look at Owens, that does it differently. Well, I agree. Fitzgerald is very instructive on that. Page 348 of the Fitzgerald opinion says that... Is it controlling? I believe that it is. It says, plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a substantial factor in bringing about the result. Obviously, that's in the larger context of having that opinion offered as a reasonable degree of medical certainty. But Fitzgerald stands for the concept, for the holding that there has to be a reasonable basis for the expert to make the conclusion. Right. It's a reasonable basis for the opinion. But the words are not talismanic. Your Honor, I don't disagree with that. I think what's important in this case, and if we look at the cases cited by the plaintiff, the Day case and a couple of the others, speak to the idea that you have to look to the deposition, the testimony as a whole. You can't just excerpt sound bites. All right. Okay. And looking at it as a whole, it's my understanding that your argument is that somehow her deposition testimony was in conflict with her expert report or with her affidavit. Can you point to me the conflict? Yes, Your Honor. I'm glad to say that I learned a little Latin in preparing for this, and what we have here is ipse dixit, which is probably not the way you pronounce that. But that is an assertion without proof. It is so because Dr. Root says so. Okay. But I thought that throughout the course of your briefing that you found and the district court found something at odds between her deposition testimony and her follow-on affidavit, that they were inconsistent. How are they inconsistent? I'm not sure I'm seeing it. It starts here. And again, this is looking at the deposition as a whole. On page 33, lines 7 through 19, Dr. Root admitted there's no way to know if Ms. Riggins received thickened liquids or not. Her opinion is she didn't receive thin liquids. Or she did receive thin liquids. This has to do with the person's swallowing difficulties. You thicken the liquids like a milkshake so that it's less likely to go into the lung. On page 34, for the second time, she said, I don't know what she aspirated on. You mean 134? Page 34 of her deposition. Okay. So what is that in the JA? Alright, go ahead. Okay. Page 34 of her deposition, she says she could have aspirated on lunch, thin liquids, or a snack. The allegation is thin liquids. That's the only way the defendant is liable. On page 35, for the third time, she said she could have aspirated on pureed foods or her own secretions. She was then asked by me, after admitting three times, that she doesn't know what Ms. Riggins aspirated on. Her response was, without having any evidence that her fluids were being thickened, more likely than not, it was on thin liquids. Right. Well, I understand her opinion throughout to be on the causation issue, that more likely than not, and she also says sometimes to a reasonable degree of medical certainty, that Ms. Riggins aspirated on thin liquids. The thing that she responded no to that she couldn't say within a reasonable degree of medical certainty was, she could not say what it was. She couldn't say if it was some sort of food or what it was. Nobody could say that. So how is that inconsistent? How is that a problem? Well, the plaintiff has the burden to establish causation. And she said that for causation, more likely than not, it was caused by a thin liquid. Does the plaintiff have the burden of proving what that thin liquid was? That's ipsa dixit. She has to have a basis to state that. She has none. When cross-examined, she had to admit seven different times I don't know what caused her to aspirate. It could have been any of a number of things. She has to identify She said thin liquids caused her to aspirate. She said she didn't know seven times what caused her to aspirate. She said it was more likely than not that she aspirated on thin liquids, but she couched that in these terms on page 36 of her deposition. With not having any evidence that her fluids were being thickened, then my opinion is more likely than not it would be thin liquids. And in full disclosure, experts are allowed to draw inferences on the lack of something. If the standard of care would be that you document you're doing it, it's not there they can draw the inference that the standard of care was breached and then to a reasonable degree of medical certainty, or more likely than not, that's what caused the But what's important is in this case there is evidence that she chose to disregard and then were left with nothing more than it is so because I say it's so. On page 36 she had to admit when confronted with the actual evidence there are monthly summaries for July and August of 2014 reflecting that they were using thickened liquids. She admitted that is true. She was then confronted on page 40 lines 16 through 21 that there were in fact nurses notes documenting that the facility was using thickened liquids, not thin. When asked to point to what are you basing your opinion on that this was thin liquids, she couldn't cite to anything other than it's my opinion. Wasn't there a period where it was not charted properly that they were giving thickening, adding thickening to her liquid? She didn't point to any such. I'm talking about in this record, are you saying that they charted every day that they put thickening in? That's not the standard. She did not say that was the standard. I didn't ask you was that the standard. I'm asking you is it correct that it didn't chart but they gave her thickening. Is that correct? They did not chart it every day, nor were they required to chart it every day. What they've got are nurses documenting on a monthly basis a number of things, medications, treatments, dietary needs. So you're holding against the expert that she didn't have documentation to support her opinion when the reason she doesn't have documentation to support her opinion is because your client did not maintain that documentation. Is that right? That is not right at all. My client did maintain the documentation. Monthly? Monthly and daily nurses notes. There's nobody that said the standard of care requires daily notes to document administration of thickened liquids. Ms. Riggins had an order for thickened liquids. The nurses document they were following those orders. That order accompanied her to the hospital for thickened liquids. That goes to weight, doesn't it? I believe it likely does, Your Honor. The point of that is that Dr. Rupp had no basis to offer her opinion that the facility was using thin liquids. On page 42 she admitted that Ms. Riggins was in fact receiving thin liquids and she doesn't know what caused her to aspirate. Now, the Fitzgerald case alluded to earlier. Yes, she does. She said it was caused by thin liquids or food. That is correct. Alright. So she did have an opinion as to what the cause was. This is one or the other. Now, did she make any distinction in this record as to which one it may be? She could not say. She didn't mention anything about the status of this patient led her to one versus the other? She could not say, Your Honor, other than to say it is simply my opinion. More likely than not, she aspirated on thin liquids. Didn't she mention, in fact, that she was a dementia patient that led her to believe that it was not food? No, Your Honor. That's not in the record. She was a dementia patient. And there was no reference to that? That dementia is unlikely to see that aspiration in food in a dementia patient? That's not in the record? I'm not trying to dodge your question. I know you're not. I know you're not. Let me answer it in what I think you're asking. Ms. Riggins was an end-stage Alzheimer's dementia patient. Right. She developed dysphagia which meant that she could not properly swallow and you put something in her mouth and it's likely to go into her lung. Right. This is the reason they put her on pureed foods and thickened liquids was because they believe that you're less likely to aspirate on those. Dr. Rupp had to admit, though, you can even aspirate on thickened liquids, pureed foods, or your own secretions. But you're saying that Dr. Rupp made no reference to her dementia status having an influence as to which why she thought it was more likely liquid than food, right? That's all I'm asking. No, she did not split those hairs. Now, and Judge Thacker, you actually read some excerpts from Dr. Rupp's report. Obviously, at the beginning of page 2, she does couch her opinion in terms of to a reasonable degree of medical certainty. However, after being confronted with the evidence and admitting that she did not know what Ms. Briggins aspirated, she stated, I can't stand by that opinion. That's a little too far. She didn't say I can't stand by that. The question is that you asked her was whether it was food or fluid and she said the most likely candidate would be liquids and then you said, but you can't say that to a reasonable degree of medical certainty and she said no. The question was about what it precisely was that she aspirated on. That is correct. In her report. So she did not say I can't stand by that. She did. Where? Page let's see. I asked her can you stand by your report where it says it is your opinion within a reasonable degree of medical certainty. Well, maybe you're, okay. Where is that? That is on page, let's see. 70 through 71. And again, I apologize. I'm referencing the actual deposition page number. I know. And I apologize. We're not at the actual deposition. We're on appeal. So a JA site would be more helpful. I apologize. Lesson learned. Because you might be right about what you're saying, but unfortunately I can't find it. Well, I believe to kind of cut the chase. She does say, page two, top of report, it is my opinion within a reasonable degree of medical certainty that the care providers at the Bryan Center breached the standard of care given to Ms. Nellie during her stay at the facility and that this breach led to her death on September 8, 2014. Her apparent breach is administration of thin liquids. When asked can you offer that opinion to a reasonable degree of medical certainty, she clearly said no. Not once, but twice because the court reporter had to ask for that question and answer to be repeated and she said no twice. Right. I see that. I just don't see where she said I can't stand by my report. If you look to the bottom of the page prior to that, I couched my question in terms are you able to stand by that position? So the focus here really is on causation. Absolutely. The co-counsel had alluded to the more likely than not standard, but in alluding to it, that's only part of it. The probability aspect of whether it caused it must be couched with preceding language. Can you state to a reasonable degree of medical certainty that more likely than not it caused it? Otherwise, a naked statement that more likely than not is what Judge Becker earlier characterized as no better than my opinion or the jury opinion. So that's what you are asserting is missing in the case is that you have to have that language from a medical expert, even an inaugural law or federal law that it is being stated to a reasonable degree of medical certainty. That more likely than not. Based on the sufficiency I would add, based on the sufficiency of the evidence. Yes, that is correct. I would also point out that at the very shifting to the sham affidavit doctrine, because after we filed our motion for summary judgment Dr. Rupp came forward with an affidavit where she basically changed her opinion and paragraphs 9 and 10. What is our standard of review of that? Well, this was not raised on appeal so I don't think it's to be considered, but I don't get to make that ruling, so in the event that I am wrong on that I want to address it. Paragraph 9 and 10 says that based on her review of the records, it was and remains my opinion that Mrs. Riggins more likely than not aspirated on a thin liquid. It is further my opinion that this aspiration led to aspiration pneumonia and Mrs. Riggins death. These opinions are within a reasonable degree of medical causation and probability. She could not say that in her deposition. In her report, last sentence says in summary it is my opinion that more likely than not the breach in the standard of care by the staff at the Bryan Center and not placing thickener in thin liquids caused Mrs. Riggins to suffer an acute aspiration on September 3rd, 14th, resulting in her death. In her deposition she admitted that that last sentence written in her report, and my apologies Judge Thacker, I was getting the standard of care to a reasonable degree of certainty confused with this aspect of her report. Page 70 to 71, she admitted that that last sentence, more likely than not the breach caused the aspiration was not correct and she could not stand by it. She doesn't say she can't stand by it. Well she says it's not correct. She just says no. And she does say it's whatever she was taking in that caused her to aspirate. Right, and that's the dilemma here is she doesn't know and therefore we don't know. We can't defend against something that is speculative or subjective. The objective evidence here is... Well it's your client that definitely knows what she was taking in or should know. They documented that. It's in the record. There's evidence to support what she was receiving. There was further evidence that is on page 59 of her deposition, lines 16 through 20. She was asked what a chest x-ray indicating lungs are free of active disease means and she testified that that would indicate there's no aspiration pneumonia. There was a chest x-ray taken the morning of the discharge to the emergency room and the evening that she arrived at the emergency room. Both showed that her lungs were free of disease. She admitted that would indicate no aspiration pneumonia. Again, evidence that she is choosing to ignore because it does not support her opinion. And her opinion is nothing more than an assertion without any proof. Thank you for your time and attention. Thank you counsel. I want to pick up on the point you discussed Judge Thackeray that Dr. Rupp at no point disavowed her opinion provided previously in the deposition or in her report. There was a long question asked to her on page 107 of the appendix to which she said it's whatever she was taking in. That answer was then interrupted with a new question, food or fluid question mark and then a statement. You've already said it twice. To which she says true, true but the most likely candidate would be the liquids. And that comes right before the medical certainty question. She never disavowed her testimony. Nothing like that ever happened and defense counsel never asked her to do that. What I think is a new argument here that somehow Dr. Rupp did not have a proper basis to give his opinions. And that's one of the reasons early in my argument I pointed out the foundational basis of her opinions has never been challenged I think until now at oral argument. What the district court ruled is that she was not sufficiently confident in her opinions. And that goes back to a semantics issue between reasonable degree of medical certainty that you were talking about Judge Wynn and the more likely than not standard. The two are connected you would agree. You don't have one without the other. For her to simply state more likely than not is to just simply an opinion. For her to even state is my opinion more likely than not is just an opinion. At least in terms of Fitzgerald more specifically Owens. Owens is a North Carolina case. The court has said you need to state to a reasonable degree of medical certainty that is more probable or more likely than not if you want that this caused the injury. And here the problem is when she then disavows the medical certainty aspect of it, it takes her out of the expert into opinion type evidence. The factual grounding of it is something Owens spoke to and that is that's where he found it on that case that the doctor had stated medical certainty. But then the court went on and said that that opinion was not grounded in facts that would justify a medical certainty determination. That's where you get in the inconsistency of what was it solid food or was it liquid? That sort of thing. So that's how you get into this question of whether or not the facts support it because that opinion of medical certainty must be grounded in facts that will support it. I understand that your honor and I think the case law sometimes does conflate these terms which makes all of our jobs more difficult. But Owens makes it very clear. And Owens is a North Carolina case. It's a fourth circuit case that addressed a North Carolina medical malpractice issue. So it is right there. Fitzgerald I think it was a Virginia case. I was looking at it trying to wonder. In both cases they seem to indicate if it's a sufficiency question that goes it's under federal law. Whether it is federal or state I don't think it matters in terms of the use of those two terms to a reasonable degree of medical certainty which makes them a medical doctor. I can state more likely than not. I mean if I'm based upon the facts the way it sounded to me I probably could state a lady on the bench more likely than not she died from it. It looked like to me but that's not to a reasonable degree of medical certainty. Your honor I respectfully disagree that there's a material difference between those two terms in the case law. And I believe we have a concession. Well let me make sure I don't know if we'll disagree or not. I'm saying they all go together. It is one sentence and you're taking one part of the sentence. The sentence starts out and you as a medical expert state to a reasonable degree to medical certainty that more likely than not this was the cause of the injury. What you want to do is just say all that expert because it's an expert if so factual can then say more likely than not this caused it and that's sufficient. And I don't think that's correct but certainly we will do the research to make sure. You're not bound by what I'm saying up here now. It will be looked at more carefully. But I do believe you have to have both of those things connected because this is a medical expert and not just a mechanic that you call up on the stand or someone else or someone like me. I understand that your honor and I would point the court toward Day v. Bryant which I do believe tries to reconcile these issues and these issues of as the defendant conceded Day was a North Carolina Court of Appeals case? That's right your honor. And it's the only case where anything... As much as I've tried to argue it typically a Court of Appeals case is not really a pronouncement of the state's court law. It really comes from the state Supreme Court. Of course I'm biased there. Having sat on the Court of Appeals so long I always thought it was. Your honor, as you know from your experience that the Court of Appeals in North Carolina does a lot of the heavy lifting. The Supreme Court gets very few of these medical negligence cases and I would point the court toward Day v. Bryant because that's the only case cited by either of the parties where anything like what happened here happened in that case and it was reconciled to where the entire record had to be looked at and any conflicts between the statement any magic word issues are issues of credibility for the jury. Mr. Walt, may I ask you a question? Yes your honor. I guess your colleague on the other side must be right because you heard me ask a question about did she make any statement about dementia being a factor and you can't be up here rebuttalist to rebut so you didn't rebut that. Because maybe she wouldn't ask the question about the possibility of dementia patients aspirating on period foods and then Dr. Root replied that it was less likely. Your honor, there's a long discussion of this issue. No I'm not asking about a long discussion. I'm talking about did she say that or not. I believe that she did. Well you should need to know that if she said it or not. I don't believe your honor any of her mentioned Ms. Riggins' dementia. You don't think so? I don't think so. Well okay, alright. I think it's based upon the medical order. But here's the question. Didn't your expert say it was either liquid or food? Yes your honor. Do you win if it's food? We don't your honor. Alright then. What is the tipping point for her to say it was more likely liquids? Maybe I'm wrong. I thought she answered the question and said it's less likely because of dementia. But now you say she didn't. I'm going to check the record because I don't have the JA site right here in that. So what tips are there? Your honor, I think that there's been more confusion here because she was asked twice does she know? I'm talking about your theory of the case. When you have a medical malpractice case, your theory is that it was the liquid and they weren't administering as they should. Good theory. Good meaning I'm not making a value judgment, but that's your theory. You get an expert. Your expert brings it down to aspiration, the cause of death, you've got all the connectors. But she comes up with she's somewhat equiposed from a clinical standpoint. I thought the expert was remarkably candid, I thought. And she said it's food or liquid. But she said it's more likely liquid. So what I'm saying, in your theory of the case, what made her tip that way versus the other way? And I thought the record said she said because in dementia patients it's less likely that food would be the source of the aspiration. But I'm wrong about that I suppose because you said not. But I'm saying if I'm wrong about that, what is it in the record that tips? I don't care what this says. Reasonable medical certainty, likelihood. The point is, what tipped it in this record? Your Honor, I'm just being clear that I don't believe it was the singular issue for dementia. Ms. Riggins was very old. She had Alzheimer's, dementia, a number of serious medical issues. And I believe that Dr. Rupp considered her entire medical history, her medical condition, as well as the doctor's orders to not give her, to only give her thick and liquid. But she was eating every day. She was eating pureed food. So again, what tipped it to liquid? That was her opinion after review. Now I ask you what tipped it? We use evidence to make that determination as to what tipped it. That's all I'm asking. It was the entire record of the Bryan Center and her medical history. And Your Honor, if I can just finish answering that question, she was asked, and she was remarkably candid, she was asked a number of times if she knows, if the issue is am I six foot two? She probably could know that if she looked at my medical records, if she looked at photographs of me, some things like that. We've had other issues where it's an issue of when does declines cancer start? And the expert does not know the exact day or even the week. But the expert has to give their opinion. That's exactly what Dr. Rupp has to give here, her opinion. She gave that opinion to her more likely than not. Under North Carolina law, that's proper. Therefore, the District Court erred in entry summary judgment. And we respectfully ask this Court to reverse that ruling and remand this case for trial. Thank you, Your Honors. Alright. Okay, we'll come down to Greek Council and proceed to our final case for today.
judges: Roger L. Gregory, James A. Wynn Jr., Stephanie D. Thacker